**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Georgene Vesecky, | No. CV 07-1173-PHX-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| Garick, Inc., | |
| Defendant. | |

Currently before the Court are Plaintiff's Motion for Partial Summary Judgment (Dkt.#24) and Defendant's Cross Motion for Summary Judgement. (Dkt.#30). Also before the Court is Plaintiff's Motion to Strike Exhibit #1 to Defendant's Statement of Facts. (Dkt.#34). After reviewing the relevant documents, the Court issues the following Order.

**I.      Factual Background**

On July 14, 2007, Georgene Vesecky brought the present action asserting discrimination on the basis of a disability in a place of public accommodation under Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., and a similar state based claim brought under the Arizonans with Disabilities Act (AzDA), A.R.S. § 41-1492, et. seq. (Dkt.#1).

Georgene Vesecky is disabled, requiring the use of a wheelchair for mobility. (PSOF, ¶ 1). On February 2, 2007, Vesecky visited the Burger King restaurant operated by Defendant,

1  Garick, Inc., in Tempe, Arizona. (Complaint, p. 2). According to Vesecky's deposition
2  testimony, she had previously visited the restaurant on three to five other occasions taking
3  two buses from her home to get to the Tempe Burger King. (PSOF, ¶ 5). Vesecky had also
4  been driven there by a now deceased friend. (PSSOF, ¶ 19).

5  On the day in question, Vesecky alleges to have arrived at the Burger King only to find
6  several physical structures obstructing her ability to access the restaurant in a manner similar
7  to its non-disabled customers. (PSOF ¶ 6 ). These alleged physical barriers form the basis
8  of Plaintiff's ADA claims. In the course of discovery, Vesecky retained an expert to conduct
9  a comprehensive site inspection of Defendant's property to determine whether the
10 establishment complied with the Americans with Disabilities Act Accessibility Guidelines
11 Standards (ADAAG). In his report, Plaintiff's expert documented alleged ADA violations
12 at Defendant's business and estimated the cost of "barrier removal" for each non-compliant
13 structure. (PSOF Exhibit 3). Plaintiff conducted no other discovery.

14 Defendant countered with its own expert to rebut the factual findings submitted by
15 Vesecky. (DSOF Exhibit 5). However, unlike Vesecky, Defendant's expert did not submit
16 estimates to the Court regarding the cost of improving the property, nor did they submit any
17 financial information related to expenses that would be incurred in undergoing any of
18 Plaintiff's proposed improvements. Defendant also attached as an exhibit the Declaration
19 of F. Rick Cowley, a principal of Garick, Inc. (DSOF Exhibit 1).

20 **II.    Standard**

21 A motion for summary judgment may be granted only if the evidence shows "that there
22 is no genuine issue as to any material fact and that the moving party is entitled to judgment
23 as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the
24 burden of demonstrating the absence of a genuine issue of fact for trial. Leisek v.
25 Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002) (citing Celotex Corp. v. Catrett, 477
26 U.S. 317, 323 (1986)). To defeat the motion, the non-moving party must show that there are
27 genuine factual issues "that properly can be resolved only by a finder of fact because they
28 may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477

1  U.S. 242, 250 (1986).  The party opposing summary judgment "may not rest upon the mere
2  allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing
3  that there is a genuine issue for trial."   Rule 56(e).   See Matsushita Elec. Indus. Co., v.
4  Zenith Radio Corp., 475 U.S. 574 (1986).  The evidence must be viewed in the light most
5  favorable to the nonmoving party.  Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001)
6  (en banc). The party that bears the burden of "producing sufficient evidence to defeat
7  summary judgment regarding each of the store's alleged ADA violations" is the same party
8  that would bear that burden at trial.  Doran v. 7-Eleven, 506 F.3d 1191, 1202 (9th Cir. 2007)
9  (citing Celotex Corp., 477 U.S. at 323).

## III.    Burden of Proof Under the ADA

Title III of the ADA prohibits discrimination on the basis of disability in places of public accommodation. 42 U.S.C. § 121821(a).  One type of discrimination proscribed by the act is "failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable."  42 U.S.C. § 121182(b)(2)(A)(iv).   On the evidence presented to the Court, it is undisputed that Garick's establishment is an "existing facility" as defined by the Act.  See 28 C.F.R. § 36.304.  The parties are in agreement that Georgene Vesecky is disabled—due to health concerns she requires the use of a wheelchair for basic mobility. Moreover, it is undisputed that Garick's restaurant is a place of public accommodation and that certain "architectural barriers" as described by Plaintiff's expert are present there (these barriers are described with specificity by the Court in the section below). Whether removal of these barriers is readily achievable is, however, a question very much in dispute.

Under the ADA, the term readily achievable means, "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9).  The ADA also sets forth a number of factors for courts to consider when making a determination:

> (A) the nature and cost of the action needed under this chapter;
> (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;

> (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
> (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

Id.

The Ninth Circuit has yet to rule on whether the plaintiff or defendant bears the burden of proof in showing that removal of an architectural barrier is readily achievable. In the instant case, both Vesecky and Garrick cite the same case, Wilson v. Pier 1 Imports, Inc., 439 F. Supp. 2d. 1054 (E.D. Cal 2006)[1], to support the position that it is the other side that should bear the burden of proof before this Court. Unfortunately, due to the timing of the briefing, neither party was able to discuss the relevance of the recent Ninth Circuit opinion in Molski v. Foley Estates Vineyard and Winery, LLC, 531 F.3d 1043 (9th Cir. 2008), and whether it represents a break from the burden-shifting framework adopted by almost all federal courts that have dealt with the readily achievable issue for architectural barrier claims brought under the ADA. See MacClymonds v. IMI Inv., Inc., 2007 WL 1306803, *4 (S.D. Tex. April 5, 2007) (noting that every court to have considered the issue has followed the burden-shifting framework).

The seminal case addressing how to properly allocate the burden of proof between the parties is Colo. Cross Disability Coalition v. Hermanson Family, Ltd., 264 F.3d 999 (10th Cir. 2001). There, the Tenth Circuit determined that the "[p]laintiff bears the initial burden of production to present evidence that a suggested method of barrier removal is readily achievable." Colo. Cross, 264 F.3d at 1006. If the plaintiff meets this evidentiary hurdle, it then shifts to the defendant, who "bears the ultimate burden of persuasion regarding its affirmative defense that a suggested method of barrier removal is not readily achievable." Id.

---

[1] While both of the parties cite accurately to Wilson, the case is properly understood as applying the burden shifting framework of Colo. Cross.

1 The Ninth Circuit has subsequently applied <u>Colo. Cross</u> without much discussion, <u>see</u> <u>Doran</u>, 506 F.3d at 1202, as have various district courts within the Circuit. <u>See</u> <u>Wilson v. Haria & Gogri Corp.</u>, 479 F. Supp. 2d 1121, 1133 n.7 (E.D. Cal. 2007); <u>Hubbard v. Gupta</u>, U.S. Dist. LEXIS 83544, at *22 (S.D. Cal. Nov. 15, 2006); <u>Wilson</u>, 439 F. Supp. 2d. at 1067; <u>Eckert v. Donahue Schriber Co.</u>, 2003 U.S. Dist. LEXIS 27023, at *7 (E.D. Cal. Oct. 14, 2003); <u>Mannick v. Kaiser Found. Health Plan, Inc.</u>, 2006 U.S. Dist. LEXIS 57173, at *17 (N.D. Cal July 31, 2006) (noting the "sound reasoning and analysis in <u>Colo. Cross</u>").

The Ninth Circuit has only recently dealt directly with <u>Colo. Cross</u>. In <u>Molski</u>, the court declined to apply the burden-shifting framework in the context of barrier removal from within historic buildings. <u>Molski</u>, 531 F.3d at 1048; <u>see</u> ADAAG 4.1.7. The court reasoned that the burden of proof in such cases should rest solely with the Defendant because, as ADAAG 4.1.7 mandates, "the entity undertaking alterations . . . should consult with the State Historic Preservation Officer." This statutory language, according to the court, "does not place burden on the party advocating for remedial measures," but on the "party with the best access to information regarding the historical significance of the building." <u>Molski</u>, 531 F.3d at 1048. Interestingly, in suggesting its disapproval with the burden-shifting framework, the court went on to quote at length from the dissenting opinion in <u>Colo. Cross</u>: "[i]f plaintiff's must all but present the court with a preapproved construction contract for a sum certain which includes detailed plans, impact statements, engineering studies, and permits to meet their threshold burden, virtually no plaintiff could afford to bring . . . [an ADA] claim." <u>Id.</u> (quoting <u>Colo. Cross</u>, 264 F.3d at 1011 (Lucero, J. dissenting)). The court then noted that "congressional intent behind the ADA support[s] placing the burden of production on the defendant." <u>Id.</u>

This Court is mindful of the informational imbalance that may exist between plaintiffs and defendants with respect to the ease and cost with which architectural barriers may be removed. However, until the Ninth Circuit provides additional and specific instruction to the lower courts this Court will follow the overwhelming majority of federal courts that apply the burden-shifting framework of <u>Colo. Cross</u>, specifically in cases where a historic building

1 is not at issue. The Court, therefore, finds that Vesecky has the initial burden to produce
2 evidence that removal of the barriers on Garick's property are readily achievable, or "easily
3 accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C.
4 § 12181(9). If Veseckey carries this burden, it will shift to Garick who will bear the ultimate
5 burden of persuasion as an affirmative defense.

6 **IV.    Sufficient Evidence Required to Show Removal is Readily Achievable**

7 Just as the Ninth Circuit has not yet addressed the aforementioned burden of proof, there
8 is also no precise legal standard recognizing when a plaintiff has made an initial showing
9 under Colo. Cross. Although courts have referred to the fact that the issue of "readily
10 achievable is a fact-intensive inquiry that will infrequently be decided on summary
11 judgment," id., it has also been noted that plaintiffs must not present merely "speculative
12 concepts . . . rather than evidence that a specific design was readily achievable" to meet its
13 burden. Colo. Cross, 264 F.3d at 1009.

14 To this end, there is some variance among district courts regarding "how much evidence
15 and what evidence" is required by plaintiff to make an initial showing. MacClymonds v.
16 IMI Inv., Inc., 2007 WL 1306803, *6 (S.D. Tex. April 5, 2007). In Hubbard v. Gupta, the
17 court found plaintiffs had met their initial burden by submitting an expert report with a cost
18 estimate that was "not broken down to show the costs of individual projects," along with a
19 declaration that drew on the public record to estimate the value of the defendant's financial
20 holding to support why plaintiff's estimates should be considered relatively easy to
21 implement. Hubbard, 2006 U.S. Dist. LEXIS 83544, *22. And in Mass. v. E*Trade Access,
22 Inc., 464 F. Supp. 2d 52, 61 (D. Mass. 2006), another court noted that at a minimum a
23 plaintiff should "provide a general removal plan and discuss its feasibility, bearing in mind
24 both structural concerns and estimated costs." Furthermore, MacClymonds v.IMI Inv., Inc.,
25 found that a plaintiff had not met its initial burden when it "failed even to suggest a plan of
26 modification . . . present evidence related to the ease and cost of removal or . . . [information]
27 relevant to any of the statutory factors used." 2007 WL 1306803, *6.

28

1 **V.     ADA Analysis**

2    The Court will now turn to address each of the individual barriers alleged by Vesecky in 3 either her Complaint or Motion for Partial Summary Judgment, where four major non-4 compliant areas of Defendant's restaurant were identified.  These areas include the parking 5 lot, the public pay phone, the interior of the restaurant, and the women's and men's 6 bathrooms.  Besides arguing that removal of certain barriers is not readily achievable, 7 Defendant contends that some of Veseckey's claims have been mooted by changes 8 Defendant has already made to the premises, and that Vesecky lacks Article III standing to 9 pursue other claims.

10        **A. The Parking Lot**

11    Vesecky alleges that the two accessible parking spots provided at the restaurant do not 12 comply with ADAAG  4.1.1(5)(a)-(b), 4.5.1, 4.6.2, 4.6.3, 4.6.4.  The non-conformities are 13 as follows: (1) the parking spots do not have an "ISA Post to wall mounted reserved parking 14 sign;" (2) at least one van accessible parking space is not provided; (3) the ground surface 15 is required to be stable and even, and it is "uneven due to erosion and deteriorated asphalt;" 16 (4) the shared access aisle is only fifty-two inches wide, under the accepted eight foot 17 standard; (5) the wheelchair accessible curb ramp has a slope over 2% in all directions, the 18 "slope within the [access] aisle" is 9.2% and the "running slope in the north accessible 19 parking space measures 2.9%;" (6) and the two accessible parking spots are not the closest 20 to the facility. (PSOF, ¶ 7).  Defendant did not contest that the parking lot qualified as an 21 existing architectural barrier under the ADA.  See (DSOF Exhibit 5).

22    With respect to whether Garick's removal of the parking lot barriers is readily achievable, 23 the only evidence offered by Plaintiff was a cost estimate submitted by her expert, which 24 stated nothing more than that the total cost of renovating the parking area would be 25 $1,186.00. (PSOF Exhibit 3, p. 3).   Plaintiff later submitted a Supplemental Statement of 26 Facts, arguing that these upgrades could be accomplished by "resurfacing and repainting the 27 parking area," and that such work does "not require permits and entail[s] routine 28 maintenance."  (PSSOF, ¶ 28).

1    Although Plaintiff's expert is a general contractor with experience in the field of ADA
2 compliance, a bare bones price estimate that is completely unsupported by additional
3 evidence is insufficient for a plaintiff to meet their burden of production under Colo. Cross.
4 To make an initial showing that barrier removal is readily accessible, Plaintiff should have
5 provided this Court with at least some evidence bolstering her expert's pricing, such as an
6 itemized cost estimate that accounts for materials and labor, a general removal plan that
7 includes a basic time frame for the project, or invoices from other comparable projects. In
8 the papers submitted to the Court, there was no indication why barrier removal would cost
9 as much as the expert had predicted, and the Court is not prepared to rely on a single sentence
10 in a site inspection report to conclude barrier removal is readily achievable. In addition,
11 Plaintiff offered not so much as even a modicum of evidence to support the claim that the
12 changes her expert suggested to the parking lot were in the realm of routine maintenance or
13 that they could be accomplished without the need to go through the City of Tempe's
14 permitting process. This is underscored by the fact that Vesecky did not make reference in
15 her supporting documents to any of the relevant statutory factors under 42 U.S.C. § 12181(9).
16    The Court finds that requiring Vesecky to produce evidence similar to that which is
17 described above would not place an onerous or unreasonable burden on ADA plaintiffs.
18 Indeed, all of these things could have been obtained with a minimal amount of investigation
19 or through discovery requests. The Court notes that besides the site inspection, Vesecky
20 chose not to conduct any other discovery. Without a more fully developed record, Plaintiff's
21 alleged parking lot violations cannot proceed to a jury. Therefore, Defendant's Cross Motion
22 for Summary Judgment will be granted on all claims relating to Garick's parking lot.
23    **B. Public Pay Telephone**
24    Vesecky claims that the exterior public telephone is non-compliant under ADAAG,
25 4.1.3(17), 4.31.2, 4.31.3, 4.31.5. Plaintiff's expert specifically alleges that (1) the "forward
26 approach configuration" is sloped at 13.8%, where the maximum slope is 2% in all
27 directions; (3) the coin slot is mounted at "fifty-five inches AFF," above the maximum height
28 of forty-eight inches; (4) and the phone is not equipped with volume control and, "does not

- 8 -

1 appear to be hearing aid compatible." (PSOF, ¶ 8). Garick's expert did not contest Plaintiff's
2 findings related to the pay phone. (DSOF Exhibit 5, ¶). The cost of compliance was
3 estimated by the Plaintiff at $191.00. (PSOF Exhibit 3, p. 6).

4 Again, because Plaintiff provided the Court with only an unsubstantiated price estimate,
5 she has failed to make an initial showing that removal of the public pay phone is readily
6 achievable. Thus, Defendant's Motion for Summary Judgment is appropriate with respect
7 to the telephone.[2]

### C. Interior of the Restaurant

Vesecky's third contention alleges that the interior of the restaurant does not meet ADAAG standards 4.1.3(18) , 4.3.3, 4.32.1-2, 4.33.3, 4.34.2, 5.5. Vesecky contends (1) there is only one table seating "location for wheelchair access where a minimum of two are required"(PSOF, ¶ 9); (2) the trash can on the condiment counter is at a reach of twenty-three inches, "where a maximum height of thirty-four inches is required" (PSOF, ¶ 10); (3) the service counter area has a set of rails in front of it which are twenty-six and twenty-eight inches apart, and the ADAAG standard mandate a forty-two inch spacing where turning is required (PSOF, ¶ 11); (4) and the ATM machine "is located against a partition wall and centered at only seven and one-half inches from the sidewall, where a space at least thirty inches wide (or forty eight inches wide if a parallel approach) is required." (PSOF, ¶ 12).

With respect to wheelchair accessible seating, Garick's expert contested Vesecky's finding, arguing that chairs at four other seating locations are removable, which places the restaurant at over 5% accessibility for all fixed seating under the ADAAG standards. (DSOF Exhibit 5, p. 5) With respect to trash receptacles, Defendant's expert noted that "[t]here are other trash receptacles that are accessible and provided for use by the public." Id. Garick's expert did not contest the findings relating to the rail length or the ATM machine. Id. The cost of compliance estimated by Plaintiff's expert was $668.00 for the tables, $427.00 for the

---

[2]In addition, Vesecky does not have standing to challenge the volume control nor any other features of the phone that the ADA requires for those with a auditory disability. See Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).

- 9 -

1  service counter trash can, $1,500.00 for the service counter rails, and $0 for the ATM
2  machine. Id.

3  According to Defendant, both the ATM machine and the railing are now ADA compliant:
4  Garick has already completely removed the ATM machine from the premises and the spacing
5  problem with the railing has been cured. (DSOF Exhibit 1, ¶ 9); (Defendant's Reply in
6  Support of Cross Motion for Summary Judgment, p. 3). Thus, Plaintiff's claims with respect
7  to the ATM and railing have been mooted by Defendant's conduct. See Wilson, 439 F. Supp.
8  2d at 1069; cf. Cupolo v. Bay Area Rapid Transit, 5 F. Supp. 2d 1078, 1084 (N.D. Cal. 1997)
9  (merely beginning to undertake removal will not moot an architectural barrier claim under
10 the ADA).

11 As for Plaintiff's remaining claims within the interior of the restaurant, while there
12 certainly exists a genuine issue of material fact as to whether there is an "architectural
13 barrier" under the meaning of the act, Plaintiff has not met its initial burden to demonstrate
14 that removal of such barriers are readily achievable since she has provided nothing more than
15 unsupported price estimates. Therefore, for reasons identical to those described above,
16 Defendant's Motion for Summary Judgment is granted on all remaining claims in the interior
17 of its restaurant.

18 **D. The Women's and Men's Bathroom**

19 Vesecky raised issue with the women's and men's bathroom, arguing that the facilities are
20 not compliant under ADAAG 4.1.2(7)(d), 4.17.2-3, 4.19.2, 4.19.4-6, 4.30. According to
21 Plaintiff (1) the restroom entrances do not provide tactile and braille signage (PSOF, ¶ 13);
22 (2) the handicap toilet stall in the women's bathroom is located twenty-four inches on center
23 from the sidewall, over the eighteen inch standard; (3) the toilet paper dispenser is mounted
24 at forty-two inches from the rear wall, over the thirty-six inch distance; (4) the handicapped
25 toilet stall latch is mounted at fifty-five inches AFF, over the forty-eight inch requirement
26 (PSOF, ¶ 13); (5) the bathroom sink in the women's restroom is thirty-four and one-half
27 inches, over the thirty-four inch requirement; (6) the bathroom mirror is mounted at forty-
28 eight inches, over the maximum forty-inches; (7) the hand-dryer "is located above and at the

1  back [of] the lavatory counter at a height of forty-eight inches AFF with a reach of twenty-
2  two inches across the counter, well beyond the maximum reach for a person in a wheelchair"
3  (PSOF Exhibit 5, p. 14);  (8) and hot water and drain pipe protection has not been provided.
4  Id. at 14. With respect to the men's bathroom, Vesecky's expert also conducted a "visual and
5  personal" observation and found barriers "similar to those found in the women's restroom."
6  Id. at 15. These findings are uncontested by Defendant.

7  As to the women's bathroom, Plaintiff's expert placed the cost of braille and tactile
8  signage at $53.00, changing the handicap toilet stall in the women's bathroom at $3,149.00,
9  and changing to the sink, faucet, mirror, hand dryer and pipe protection at $2,535.00. (PSOF
10 Exhibit 5, p. 12-15).  Plaintiff's expert also stated that the toilet stall could be remedied by
11 "removing the partition wall . . . and replacing it with another wall several inches away,"
12 while the remaining changes to the bathroom "do not require building permits."  (PSSOF ¶
13 28).  Defendant's expert countered by arguing that the City of Tempe Public Works
14 Department had informed him that a permit would be required to make any kind of
15 "plumbing modification," such as that required by Plaintiff's expert. (DSSOF Exhibit 2, p.
16 2).  Furthermore, Cowley's Declaration contends that "changes to the design features of the
17 bathroom would necessitate hiring of appropriate professional architecture and/or designers,
18 as well as contractors, to perform the work." (DSOF Exhibit 1, ¶ 10).  Lastly, with respect
19 to the men's bathroom, Vesecky estimated costs at $5,684.00.  (PSOF Exhibit 5, p. 15).

20 Garick challenged Plaintiff's Article III standing to raise claims for the lack of braille and
21 tactile signage on both the women's and men's restroom, since Vesecky did not plead a
22 disability related to her sense of vision. (Defendant's Response to Motion for Partial
23 Summary Judgment, p. 5-6).  This Court agrees.  Braille and tactile signs are meant to assist
24 those who are visually impaired and Plaintiff does not have this type of disability. "A
25 disabled individual cannot vindicate the rights of disabled persons generally."  Parr v. L &
26 L Drive-Inn Restaurant, 96 F. Supp. 2d 1065,1083 (D. Haw. 2000).   Only the Attorney
27 General may bring such actions.  Id.

28

- 11 -

1  Garick also challenged whether Vesecky has standing to pursue claims relating to the
2 men's restroom, since Plaintiff is not authorized to access the men's restroom. (Defendant's
3 Response to Motion for Partial Summary Judgment, p. 5-6).  However, the Court need not
4 reach that argument, since Plaintiff's claims relating to the restrooms fail because Vesecky
5 did not carry her burden of proof to show that removal of restroom barriers are readily
6 achievable.

7  With respect to achievability, in addition to cost estimates, Plaintiff provided the Court
8 with a rough description of the work that needed to be done to the women's toilet stall and
9 other more minor changes to the rest of the bathrooms.  However, as is the case with
10 Defendant's parking lot claims, no reference was made to the statutory factors under the act,
11 nor did Plaintiff supply the Court with any information pertaining to the scope of the
12 proposed project.  In addition,  no evidence was provided to the Court to support Plaintiff's
13 contention that barrier removal in the bathroom does not require permitting or an overhaul
14 of Defendant's plumbing system.  It is unclear how long renovating the bathroom would
15 take, what impact such a project would have on Defendant's business operation during the
16 removal process, or what income, if any, Defendant might reasonably be expected to lose
17 while undergoing the changes and why such a loss might be justifiable given its income
18 stream.

19  The Court wants to re-iterate that Plaintiff is not required to carry a monumental burden
20 to make an initial showing that barrier removal is readily achievable in order to defeat
21 summary judgment. The Court is, however, hesitant to allow an architectural barrier case to
22 proceed to trial when Plaintiff chose  not to conduct discovery and then failed to provide the
23 Court with information that is specific enough to support a finding that changes to
24 Defendant's property can be effectuated without much difficulty or expense. The Court will
25 not presume to guess the relative ease of removal, as Plaintiff would have it do here.
26 Likewise, the Court will not infer that merely because total removal cost was estimated by
27 Plaintiff's expert to be slightly under $18,000, it should be obvious that Garick could
28 implement the changes without suffering disproportionally severe consequences.  Neither

- 12 -

1 will the Court take as determinative arguments made by Plaintiff's expert that permits are not
2 required, when no evidence was offered to substantiate that claim. Therefore, the Court finds
3 that granting Defendant's Cross Motion for Summary Judgment is appropriate for claims
4 relating to the women's and men's bathroom.

### VI. Claims Brought Under the AzDA

In her complaint, Plaintiff has alleged violations of state law under the Arizonans with Disabilities Act, A.R.S. § 41-1492 et seq. Because these claims are based on the same facts that make up Plaintiff's ADA claims, the Court will not go through them again.

The AzDA prohibits a place of public accommodation or a commercial facility from failing to include features that create accessibility in structures occupied after January 26, 1993, or facilities built after that date that have made an alteration to an area in which access barriers could be removed. See A.R.S. § 41-1492.04. The uncontested facts show that Defendant's restaurant has been occupied prior to January 26, 1993, and that no alterations have been made to an area where Plaintiff claims barrier access. Summary judgment is therefore appropriate on Plaintiff's state law claims.

### VII. Motion to Strike

"It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." Beyene v. Coleman Sec. Serv., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988). In support or opposition to summary judgment, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). Conclusory and speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and to defeat summary judgment. Thornhill Publ'g Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). However, "[a]t the summary judgment stage, [courts] do not focus on the admissibility of the evidence's form. [Courts] instead focus on the admissibility of its contents." Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (citation omitted).

1   Plaintiff moves to strike Exhibit 1 to Defendant's Statement of Facts, the Declaration of
2   F. Rick Cowley, paragraph 10, on the grounds that Cowley provided impermissible expert
3   testimony and that Defendant violated the required disclosures of Rule 26(a) Fed. R. Civ. P.
4   by failing to identify F. Rick Cowley as an expert witness and failing to disclose financial
5   information. (Dkt.#34).  All three of Plaintiff's contentions lack legal merit. As Defendant
6   points out, Cowley is offering lay opinion testimony under Fed. R. Evid. 701, rationally
7   based upon his perception as a principal of Garick, Inc. for the past sixteen years. (Dkt.#38,
8   p. 4). Defendant also disclosed the identity of Cowley as a witness and notified Vesecky that
9   his testimony would concern the leasing of the premises, the history of lack of remodeling,
10  and  the general condition of the premises.  Plaintiff made a strategic decision not to depose
11  him. Additionally, as Defendant's counsel points out in its briefing, because Garick "does
12  not intend to offer any financial records in support of its defense," under such circumstances
13  Rule 26(a)(1)(A) does not require it to disclose financial information about whether Garick
14  has the financial resources to pay for any of the proposed alterations. (Dkt.#38, p.3).
15  Because Plaintiff failed to meet its initial burden, Defendant was under no duty to base an
16  affirmative defense on its financial records—although it may be ill advised to take a similar
17  approach to future ADA architectural barrier litigation, since Garick would have born the
18  ultimate burden had Plaintiff met its initial hurdle.

   **Accordingly,**

   **IT IS HEREBY ORDERED** granting Defendant's Motion for Summary Judgment. (Dkt.#30);

   **IT IS FURTHER ORDERED** denying Plaintiff's Motion for Partial Summary Judgment. (Dkt.#24);

   **IT IS FURTHER ORDERED** denying Plaintiff's Motion to Strike  (Dkt.#34);

///
///
///

- 14 -

1  **IT IS FURTHER ORDERED** directing the clerk of the Court to enter judgment
2  accordingly.

3  DATED this 29th day of September, 2008.

_____
Mary H. Murguia
United States District Judge